| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| *versus* | § | CASE NO. 1:17-CR-17(2) |
| | § | |
| ELIZABETH GRACE ROSE | § | |

**UNITED STATES DISTRICT COURT         EASTERN DISTRICT OF TEXAS**

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Elizabeth Grace Rose's ("Rose") *pro se* Motion for Early Termination of Supervised Release Pursuant to 18 U.S.C. § 3583(e)(1) and Rule 32.1(c) (#157), wherein Rose seeks early termination of her five-year term of supervised release. Although Rose's supervising United States Probation and Pretrial Services ("Probation") officer in the Southern District of Texas, Houston Division, is unopposed to the motion, the Probation Office in the Eastern District of Texas, Beaumont Division, submitted a report and recommends that the court deny the motion, allowing Rose to continue on supervision as previously ordered. The Government is also opposed to Rose's request for early termination. Having considered the motion, Probation's report, the Government's position, the record, and the applicable law, the court is of the opinion that Rose's motion should be denied.

I.      Background

On February 1, 2017, a federal grand jury in the Eastern District of Texas, Beaumont Division, returned a two-count Indictment against Rose and two co-defendants, charging her in Count One with Conspiracy to Possess with Intent to Distribute a Controlled Substance (Methamphetamine), in violation of 21 U.S.C. § 846, and in Count Two with Using and Carrying a Firearm During and in Relation to a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c). On May 5, 2018, Rose pleaded guilty to the offense charged in Count One of the

Indictment pursuant to a binding plea agreement. On July 3, 2018, the court sentenced Rose to a term of 235 months' imprisonment, followed by a five-year term of supervised release, in accordance with the terms of the plea agreement. On March 8, 2019, Rose's sentence was reduced to 117 months' imprisonment, followed by a five-year term of supervised release. On January 31, 2024, her sentence was further reduced to 106 months' imprisonment, followed by a five-year term of supervised release. On February 13, 2024, Rose was released from prison and began her term of supervised release in the Southern District of Texas, Houston Division, which is projected to expire on February 12, 2029.

In her motion, Rose, age 36, asks the court to terminate her supervision at this time, having served only 14 months of her five-year term of supervised release. She asserts that she has fully complied with all the requirements and conditions of supervision set by the court. Rose claims that since her release, she has successfully reintegrated into the community. She states that upon her release, she immediately became gainfully employed at the Title Boxing Club in Houston, where she served in various positions from October 2021 to February 2024. Rose, however, obtained this position when she was still on home confinement. Rose was not released from imprisonment until February 2024, when she began her term of supervised release and secured a position in real estate at Fresh Start Home Services in Houston, where she serves as Dispositions Manager. She claims that this position offered her a higher salary, which allowed her to provide for her family with a new rental home as of March 2024. Rose asserts that she supports her family financially, living full-time with her 16-year-old daughter and her disabled mother for whom she serves as a caretaker. She also notes that she is a member of Hope City Church in Houston.

Rose further maintains that while imprisoned, she completed a 40-hour non-residential drug abuse program, was involved in a "Trauma in Life Workshop" under the "Resolve Program," and participated in a 2-year Assisting Canine Companions by Enhancing Service Skills program in which she trained dogs to assist persons with disabilities and the elderly with mobility issues, medical alert needs, and hearing deficits. She states that she also completed educational, parenting, and vocational training, as well as faith-based, personal awareness, re-entry, and self-improvement programs. Rose contends that "the resources of the Probation Office would be better used for the supervision of offenders who have not taken the rehabilitative steps that Ms. Rose has." She asserts that she is "fully rehabilitated" and that her professional and personal life further corroborates such rehabilitation. According to Rose, "[h]er reintegration into society is complete and further supervision is unnecessary."

II.     Analysis

Title 18, United States Code, Section 3583(e) authorizes a district court to terminate supervised release at any time after the expiration of one year if, after considering certain factors set forth in Section 3553(a),[1] "it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1); *accord United States v. Johnson*, 529 U.S. 53, 59-60 (2000); *United States v. Peters*, 856 F. App'x 230, 233 (11th Cir. 2021); *Herndon v. Upton*, 985 F.3d 443, 446 n.5 (5th Cir. 2021); *United States v. Melvin*, 978

---

[1] These factors include: the nature and circumstances of the offense and the defendant's history and characteristics; the need to afford adequate deterrence to criminal conduct; the need to protect the public from further crimes of the defendant; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable Sentencing Commission guidelines and policy statements; any pertinent policy statement of the Sentencing Commission in effect on the date of sentencing; and the need to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a).

F.3d 49, 52 (3d Cir. 2020); *United States v. Cochran*, 815 F. App'x 361, 363 (11th Cir. 2020); *United States v. Davies*, 746 F. App'x 86, 88-89 (3d Cir. 2018). "Early termination of supervised release is not an entitlement." *United States v. George*, 534 F. Supp. 3d 926, 927 (N.D. Ill. 2021). Instead, the defendant bears the burden of demonstrating that early termination is warranted. *Id.*; *United States v. Luna*, No. 1:95-cr-05036-AWI, 2018 WL 10156108, at *1 (E.D. Cal. Mar. 12, 2018), *aff'd*, 747 F. App'x 561 (9th Cir. 2018). Early termination "is not warranted as a matter of course." *United States v. Morris*, No. 3:99-cr-264-17 (VAB), 2022 WL 3703201, at *3 (D. Conn. Aug. 26, 2022). "To the contrary, it is only 'occasionally' justified." *United States v. Shellef*, No. 03-CR-0723 (JFB), 2018 WL 3199249, at *1 (E.D.N.Y. Jan. 9, 2018) (quoting *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997)).

Although Rose's probation officer in the Southern District of Texas does not oppose early termination, this fact, standing alone, is insufficient to justify granting Rose's request for early termination of supervised release. *See*, *e.g.*, *United States v. Boyd*, 606 F. App'x 953, 960 (11th Cir. 2015) ("Just as a federal prosecutor or probation officer cannot dictate a district court's sentence, they likewise do not call the shots concerning a court's decision whether to terminate early a term of supervised release. A criminal sentence is the court's sentence, not the prosecutor's and not the probation officer's."); *United States v. Lynn*, No. S90-00053(P), 2022 WL 2446328, at *3 (S.D. Miss. May 31, 2022) (finding that although the Government and Probation did not oppose early termination, that fact, standing alone, was insufficient to justify granting the defendant's request for early termination of supervised release); *United States v. Hartman*, No. 3:00-cr-228-B(01), 2013 WL 524257, at *1 (N.D. Tex. Jan. 18, 2013) (denying defendant's request for early termination of supervised release despite the Government's

recommendation that it be granted), *adopted by* 2013 WL 540490 (N.D. Tex. Feb. 13, 2013); *United States v. Grimaldi*, 482 F. Supp. 2d 248, 249 (D. Conn. 2007) (denying early termination even though the defendant's probation officer supported it).

District courts enjoy considerable discretion in determining when the interest of justice warrants early termination. *United States v. Tacker*, 672 F. App'x 470, 471 (5th Cir. 2017); *United States v. Jeanes*, 150 F.3d 483, 484-85 (5th Cir. 1998); *Lynn*, 2022 WL 2446328, at *3; *see Melvin*, 978 F.3d at 52. Compliance with the terms of supervised release and with the law alone is not enough to merit early termination; such conduct is expected and required. *United States v. Taylor*, 729 F. App'x 474, 475 (7th Cir. 2018) ("[M]ere compliance with the terms of supervised release is expected, and without more, insufficient to justify early termination."); *United States v. Seymore*, No. CR 07-358, 2023 WL 3976200, at *1 (E.D. La. June 13, 2023) ("[C]ourts have generally held that something more than compliance with the terms of [supervised release] is required to justify an early termination . . . ." (quoting *United States v. Smith*, No. 10-cr-53-DPJ-FKB, 2014 WL 68796, at *1 (S.D. Miss. Jan. 8, 2014))); *Lynn*, 2022 WL 2446328, at *4 (although the defendant adhered to the conditions of his release, a balancing of the 18 U.S.C. § 3553(a) factors did not support early termination, noting that the defendant "engaged in constant serious criminal behavior when he was given chances before"); *United States v. Sandles*, No. 11-CR-204-PP, 2021 WL 3080995, at *3 (E.D. Wis. July 21, 2021) ("[C]ourts have held 'that the conduct of the defendant necessary to justify early termination should include more than simply following the rules of supervision; otherwise, every defendant who avoided revocation would be eligible for early termination.'" (quoting *United States v. O'Hara*, No. 00-cr-170, 2011 WL 4356322, *3 (E.D. Wis. Sept. 16, 2011))); *United States v. Boudreaux*, No. 2:19-CR-00377-01,

2020 WL 7635708, at *1 (W.D. La. Dec. 22, 2020); *United States v. Pittman*, No. 3:15-CR-221-O(1), 2020 WL 6564724, at *2 (N.D. Tex. Nov. 9, 2020) (finding that the conduct of the defendant did not warrant early termination of supervised release, as the defendant sought relief based on his circumstances and the alleged conduct of others) (citing 18 U.S.C. § 3583(e)(1)); *see United States v. Berger*, No. CR 09-308, 2021 WL 2354517, at *5 (W.D. Pa. June 9, 2021) ("Compliance with the conditions of supervision, including refraining from engaging in criminal conduct and paying restitution, however, is required behavior while serving a term of supervised release."). As courts have observed, "if every defendant who complied with the terms of supervised release were entitled to early termination, 'the exception would swallow the rule.'" *United States v. Kassim*, No. 15 Cr. 554-3 (KPF), 2020 WL 2614760, at *2 (S.D.N.Y. May 22, 2020) (citing *United States v. Medina*, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998)).

While the court need not find extraordinary, compelling, or changed circumstances to justify an early termination of supervised release, this does not mean that such circumstances are irrelevant to ruling on a motion under § 3583(e)(1). *United States v. Ferriero*, No. 13-0592 (ES), 2020 WL 6701469, at *2 (D.N.J. Nov. 13, 2020) (citing *Melvin*, 978 F.3d at 53); *accord United States v. Parisi*, 821 F.3d 343, 347 (2d Cir. 2016). This is because, if a sentence was "sufficient, but not greater than necessary" when first pronounced, pursuant to 18 U.S.C. § 3553(a), it would be expected that something has changed that would justify an early end to a term of supervised release. *Melvin*, 978 F.3d at 53; *United States v. Jackson*, No. 11-55, 2022 WL 2789870, at *2 (W.D. Pa. July 15, 2022); *United States v. Santoro*, No. 21-76 (MAS), 2022 WL 37471, at *2 (D.N.J. Jan. 4, 2022); *Ferriero*, 2020 WL 6701469, at *2. In other words, extraordinary circumstances may be sufficient to justify early termination of a term of supervised release, but

they are not necessary for such a termination. *Melvin*, 978 F.3d at 53; *United States v. McClamma*, 676 F. App'x 944, 947 (11th Cir. 2017) ("New or unforeseen circumstances can justify a modification, but such circumstances are not necessary."); *Parisi*, 821 F.3d at 347 (recognizing that "changed circumstances may in some instances justify a modification" of a term of supervision). Nonetheless, "'generally, early termination of supervised release under § 3583(e)(1)' will be proper 'only when the sentencing judge is satisfied that new or unforeseen circumstances' warrant it." *Melvin*, 978 F.3d at 53 (quoting *Davies*, 746 F. App'x at 89); *United States v. Baptiste*, 2025 WL 871520, at *1 (E.D. La. Mar. 20, 2025) (noting that early termination is generally warranted "only in cases where the defendant shows changed circumstances, such as exceptionally good behavior" (quoting *United States v. Jones,* No. V-11-21, 2013 WL 2417927, at *1 (S.D. Tex. June 4, 2013)).

According to Rose's Presentence Report ("PSR"), prepared on May 24, 2005, her offense of conviction entails her participation in a conspiracy to possess with intent to distribute 500 grams or more of methamphetamine. FBI and DEA agents commenced an investigation in 2015 of a drug-trafficking organization distributing large quantities of methamphetamine in the Houston and Beaumont, Texas, areas and elsewhere. Agents determined that Co-defendant Jeffrey Clive Arnold ("Arnold") was supplying large quantities of methamphetamine to Rose, his fiancee at the time, and others. On November 29, 2016, agents were conducting surveillance at Rose's apartment in Houston. They observed a number of people arrive and then leave the apartment shortly thereafter, which suggested drug trafficking. One of these individuals was Arnold. As Arnold left the apartment, a sheriff's deputy conducted a traffic stop on his vehicle. The search revealed approximately 26 grams of Xanax and $770. Arnold said that he possessed

7

approximately $35,000 in a back pack inside the vehicle. When deputies were unable to locate the backpack, Arnold stated that he probably left it at Rose's apartment where there was also a large amount of methamphetamine.

Officers subsequently executed a search warrant at Rose's apartment where she was the only occupant at the time. Officers observed her exiting the bathroom where she attempted to flush methamphetamine down the toilet. Investigators recovered 730 grams of methamphetamine from in and around the toilet bowl. The search also revealed $39,295 in United States currency, a stolen Glock 9mm handgun, a Keltec 9mm handgun, a stolen Palmetto .223 caliber assault rifle, a Ruger .22 caliber revolver, a Mossberg 12 gauge shotgun, 3 rifle magazines for the assault rifle, an extended magazine for the 9mm Glock, and ammunition. After her arrest, Rose advised agents that the was expecting the delivery of approximately 2 kilograms of methamphetamine to her apartment by a runner from Mexico. Agents observed Co-defendant Neptali Solario-Carlos ("Solario-Carlos") arrive at the complex and exit his vehicle carrying a white plastic bag in each hand. He went to the door of Rose's apartment and knocked. When agents answered the door and identified themselves as law enforcement, Solario-Carlos dropped the two bags and attempted to flee. He was quickly apprehended. The bags were found to contain 1,887.1 grams of methamphetamine (actual). Rose explained to the agents that she would receive methamphetamine from Mexico and then distribute it from her apartment for Arnold, who obtained most of the payments. Agents verified this information through cell phone analysis, drug notes, and interviews with other conspirators. The investigation revealed that no less than 100 kilograms of methamphetamine were possessed by the conspiracy with the intent to distribute it in the Houston

and Beaumont areas. Rose admitted that she was part of the conspiracy and was responsible for at least 2.7 kilograms of methamphetamine (actual).

Rose's criminal history includes prior convictions for theft, possession of marijuana, and possession of methamphetamine. She was on probation at the time of her offense of conviction. Rose also has a history of poly-substance abuse beginning at age 14, which includes the daily use of methamphetamine and the frequent use of marijuana.

In this situation, the court finds that Rose's post-release conduct does not warrant early termination of her supervised release. Although Rose contends that she has fully complied with her conditions of release to date, she identifies no new or exceptional circumstances or needs. Instead, she describes herself as "a supervisee who meets expectations." Rose obtained gainful employment upon her release and has worked for a real estate company since February 2024. She has also maintained a stable residence with her teen-aged daughter and her mother. Rose, however, has been on supervised release for only 14 months.

Rose indicates that she was placed on home confinement in September 2021 during the COVID pandemic. She conflates her period of home confinement (29.13 months or 2.43 years) with her period of supervised release, asserting that she has completed 3.46 years (69.22%) of her five-year term of supervised release. This is disingenuous. *See* 18 U.S.C. § 3624(c)(1), (2). "The statute makes clear that, even though a prisoner is living at a halfway house or in home confinement, [s]he is still serving a 'term of imprisonment.'" *United States v. Ko*, 739 F.3d 558, 561 (10th Cir. 2014). "While at home, the confinee is serving a 'term of imprisonment,' and the statute refers to the confinee as 'a prisoner.'" *Id.* It is well-settled that the objectives of incarceration and supervised release are distinct and further different goals. The Supreme Court

9

of the United States has recognized that "Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." *Johnson*, 529 U.S. at 59; *see* S. Rep. No. 98-225, p. 124 (1983) (declaring that "the primary goal [of supervised release] is to ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense, or to provide rehabilitation to a defendant who has spent a fairly short period in prison for punishment or other purposes but still needs supervision and training programs after release"). "[S]upervised release, unlike incarceration, provides individuals with postconfinement assistance." *Johnson*, 529 U.S. at 60. The court is of the opinion that Rose is still in need of such assistance. In fact, in *United States v. Bowe*, the United States Court of Appeals for the Fourth Circuit stated that "Congress has manifested an intent to require full service of supervised release for rehabilitative purposes." 309 F.3d 234, 240 (4th Cir. 2002) (citing *Johnson*, 529 U.S. at 53).

Here, Rose identifies no new or exceptional circumstances or needs that would merit early release from supervision. She fails to explain how the conditions of her supervised release limit her employment opportunities, interfere with her family responsibilities, or otherwise impact her daily life in a significant manner. Rose does not clarify how being on supervised release keeps her from furthering her career, assisting her family, or engaging in sports, religious, or volunteer activities. According to Probation, Rose is currently being supervised on a low-risk administrative case load which has minimal reporting requirements. Under the circumstances, the court finds the current conditions of Rose's supervised release are not onerous and remain appropriate.

At this time, Rose has served less than one-fourth of her five-year term of supervised release. While her achievements to date should be commended, continuing Rose on supervision

will provide her the best opportunity for a successful sustained reentry in view of her prior involvement in crimes involving drug possession and distribution, the possession of firearms, and theft, as well as her long history of substance abuse.  Requiring her to complete her entire, five-year term of supervised release safeguards against the reoccurrence of criminal activity and drug use, while imposing only a limited burden on Rose.  Generally, early termination of supervised release is not granted unless there are significant medical concerns, substantial limitations on employment, or extraordinary post-release accomplishments that would warrant such a release.  Rose does not identify any such circumstances in her motion and is instead seeking early termination of her supervision simply for complying with the conditions imposed by the court.  Thus, although Rose appears to be on the right path, the court believes that completion of her full term of supervised release appropriately reflects the seriousness of her offense, deters future criminal conduct, and provides needed structure for her continued rehabilitation.  *See Lynn*, 2022 WL 2446328, at *4.  The court, likewise, is of the opinion that Rose's five-year term of supervised release was appropriate at the time of sentencing and remains so.  *See United States v. Lewis*, No. 17-CR-28-FPG, 2021 WL 4519795, at *3 (W.D.N.Y. Oct. 4, 2021).

Probation's report confirms that Rose has maintained compliance with her conditions of supervised release.  Nevertheless, Probation still recommends that her supervised release be continued at this time, observing "the U.S. Probation Office in the Eastern District of Texas does not typically recommend early termination of supervision until an individual has completed as least half of their term, and is not in favor of early release for large scale drug offenses."  The probation officer notes that a large quantity of methamphetamine was recovered from Rose's residence along with various pistols, shotguns, and assault rifles.  Probation's report closes by

stating that although Rose "is to be commended for her success and progress in the first year of supervision, given the circumstances in this case, the U.S. Probation Office in the Eastern District of Texas concurs with the U.S. Attorney's Office and respectfully recommends the Court deny this motion for early termination." The court concurs with Probation's assessment of the situation and finds that early termination of Rose's five-year term of supervised release would not be in the interest of justice.

III.    Conclusion

In accordance with the foregoing, Rose's *pro se* Motion for Early Termination of Supervised Release Pursuant to 18 U.S.C. § 3583(e)(1) and Rule 32.1(c) (#157) is DENIED.

SIGNED at Beaumont, Texas, this 11th day of April, 2025.

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE